# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>MOISES BECERRA, et al.,<br><br>　　　　　Respondents. | Case No. 23-cv-00072-BLF<br><br>**ORDER DENYING MOTION FOR A TEMPORARY RESTRAINING ORDER**<br><br>[Re: ECF No. 2] |

On January 6, 2023, Petitioner John Doe filed an immigration habeas petition. ECF No. 1 ("Pet."). He is currently being detained by the Department of Homeland Security (DHS). *Id.* ¶ 1. Also on January 6, 2023, he filed a motion for a temporary restraining order. ECF No. 2-1 ("TRO"). The Government opposes the motion. ECF No. 15 ("Opp."). The Court held a hearing on the motion on January 13, 2023. For the reasons discussed at the hearing and explained below, the Court DENIES the motion for a TRO.

**I.　BACKGROUND**

Petitioner John Doe is a citizen of Mexico who has lived in the United States since age seven. Pet. ¶ 13. In March 2022, he was detained by Immigration and Customs Enforcement (ICE) pending removal proceedings and incarcerated at Golden State Annex in McFarland, California. *Id.* ¶ 19. On March 22, 2022, ICE initiated removal proceedings against Petitioner, charging him as removable for being a noncitizen present in the United States without being admitted or paroled. *Id.* ¶ 20.

On December 13, 2022, the immigration judge ordered Petitioner be removed to Mexico. Pet. ¶ 22, Ex. B (IJ decision). The immigration judge also granted Petitioner's application for deferral of removal under the Convention Against Torture (CAT), finding that Petitioner is more

1   likely than not to be tortured if removed to Mexico and thereby prohibiting Petitioner's removal to

2   Mexico. *Id.* Both Petitioner and DHS waived appeal, so the removal order and grant of relief

3   under the CAT became final on December 13, 2022. *Id.*

4        On December 14, 2022, Deportation Officer Abad asked Petitioner to designate three

5   countries for removal. Pet. ¶ 24. Petitioner declined to do so. *Id.* During the proceedings, DHS

6   never claimed that Petitioner had lawful status or a pathway to legal status in any country other

7   than Mexico. *Id.* ¶ 23. On December 16, 2022, Officer Abad informed Petitioner's counsel that

8   the Agency would continue to detain Petitioner while it attempts to remove him to a third country.

9   *Id.* ¶ 25. Officer Abad did not tell counsel what countries ICE was considering for removal. *Id.*

10  On December 27, 2022, Petitioner submitted a kite request to ICE asking what countries it was

11  seeking to remove him to and whether it had received a response from any of those countries. *Id.*

12  ¶ 26. On December 29, 2022, ICE responded that it was "actively seeking removal to a third-party

13  country" and that it "typically receive[s] a response from every country." *Id.* Petitioner has no

14  ties to, no lawful immigration status in, nor any known pathway to obtaining lawful immigration

15  status in any country other than Mexico or the United States. *Id.* ¶¶ 27, 28, 31. Neither Petitioner

16  nor any known family members have resided in any country other than Mexico or the United

17  States. *Id.* ¶¶ 29, 30.

18        On January 6, 2023, Petitioner filed his habeas petition, naming as Resopndents: (1)

19  Moises Becerra, Field Office Director of ICE's San Francisco Field Office; (2) Tae D. Johnson,

20  Acting Director of ICE; (3) Alejandro Mayorkas, DHS Secretary; and (4) Merrick B. Garland,

21  Attorney General. *See* Pet. The same day, he filed the instant TRO. *See* TRO.

22  **II.   LEGAL STANDARD**

23        The standard for issuing a temporary restraining order is identical to the standard for

24  issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d

25  832, 839 n.7 (9th Cir. 2001); *Lockheed Missile & Space Co. v. Hughes Aircraft*, 887 F. Supp.

26  1320, 1323 (N.D. Cal. 1995). An injunction is a matter of equitable discretion and is "an

27  extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled

28  to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 32 (2008). A plaintiff

seeking emergency injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20. "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

### III. DISCUSSION

#### A. Statutory Scheme

The Immigration and Nationality Act (INA) governs the removal of individuals living unlawfully in the United States. *See Johnson v. Guzman Chavez*, 141 S. Ct. 2271, 2280 (2021). When an alien is ordered removed by an immigration judge, "DHS must physically remove him from the United States within a 90-day 'removal period.'" *Id.* at 2281 (citing 8 U.S.C. § 1231(a)(1)(A)). The Supreme Court has stated that, under 8 U.S.C. § 1231, "[d]uring the removal period, detention is mandatory." *Id.* (citing 8 U.S.C. § 1231(a)(2)); *see also Zadvydas v. Davis*, 533 U.S. 678, 683 (2001) (citing 8 U.S.C. § 1231(a)(2)) ("After entry of a final removal order and during the 90-day removal period, . . . aliens must be held in custody."). Under the statute, the removal period may be extended in at least three circumstances. *Johnson*, 141 S. Ct. at 2281. While "the statute does not specify a time limit on how long DHS may detain an alien in the post-removal period, [the Supreme Court] has 'read an implicit limitation' into the statute 'in light of the Constitution's demands,' and has held that an alien may be detained only 'for a period reasonably necessary to bring about that alien's removal from the United States.'" *Id.* (quoting *Zadvydas*, 533 U.S. at 689). And the Supreme Court has held that "a period reasonably necessary to bring about the alien's removal from the United States is presumptively six months." *Id.* at 2281-82. The same statute has provisions regarding "[c]ountries to which aliens may be removed." *See* 8 U.S.C. § 1231(b)(2).

### B. The Parties' Arguments

#### 1. Petitioner

Petitioner argues that 8 U.S.C. § 1231(a)(2), as applied to him, is unconstitutional under the Due Process Clause. TRO at 7. He argues that his continued incarceration violates his due process rights, claiming "due process does not permit ICE to detain [Petitioner] during the removal period arbitrarily and without any process." *Id.* He asserts that his detention is unconstitutional unless DHS can establish with credible evidence that Petitioner's legal acceptance by a third country is viable. *Id.* at 7-8. Petitioner's requested relief is additional process; he asks the Court to require (1) "an evidence-based determination by DHS that third-country removal is viable" and (2) "if necessary, . . . a timely review before an immigration judge." *Id.* at 12.

##### a. Likelihood of Success on the Merits

Under the first prong of the TRO analysis, Petitioner asserts that he is likely to succeed on the merits. TRO at 7-13. Petitioner asks the Court to apply the *Mathews* balancing test, noting that several courts in this district have used that test to evaluate "as-applied constitutional challenges to mandatory immigration detention." TRO at 8; *see Mathews v. Eldridge*, 424 U.S. 319 (1976)). The *Mathews* test balances (1) the individual's private interest; (2) the risk of erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional procedural safeguards; and (3) the Government's interest. *See* 424 U.S. 319. As to the first prong, Petitioner argues his private interest—freedom from detention—is "fundamental" and "overwhelming." TRO at 8. As to the second prong, he argues that the current procedures produce a high risk of erroneous deprivation, as no procedures require the Government to justify detention during removal proceedings for individuals granted protection from removal to "the only known country that would accept" them. *Id.* at 9. And he argues that the value of additional safeguards is high, as they could ensure that the prospect of third-country removal, the basis for Petitioner's detention, is viable. *Id.* Finally, as to the third prong, Petitioner argues that the Government's interest is weak, as its relevant interest is its ability to detain Petitioner without providing process, and providing additional process is a minimal burden. *Id.* at 10-11.

4

### b. Irreparable Injury

Under the second prong of the TRO analysis, Petitioner argues that he will suffer irreparable injury in the absence of a restraining order. TRO at 13-14. He asserts that a constitutional infringement is often sufficient to constitute irreparable harm. *Id.* at 13. And he claims his injury is particularly severe given the severe conditions at Golden State Annex, the facility where he is being held. *Id.* at 14.

### c. Balance of Equities and Public Interest

Finally, Petitioner argues the third and fourth prongs of the TRO analysis. TRO at 15. First, he argues that the balance of hardships tips heavily in his favor because the Government is not harmed from being prohibited from engaging in an unconstitutional practice and the burden on the Government from enacting the proposed additional procedures is low, especially compared to the harm Petitioner suffers from his detention. *Id.* And Petitioner argues that a TRO is in the public interest because it prevents the violation of constitutional rights. *Id.*

## 2. Respondents

### a. Likelihood of Success on the Merits

Respondents argue that Petitioner cannot show a likelihood of success on the merits for two reasons. Opp. at 4-7. First, they argue that the Court does not have jurisdiction because the habeas petition is not ripe for adjudication, as the removal period has not yet expired. *Id.* Second, they argue that Petitioner's detention is required by statute, and it is therefore reasonable as a matter of law. *Id.* at 7.

### b. Irreparable Harm

Respondents next argue that Petitioner cannot show irreparable harm because the conduct he is challenging—his detention—is required by statute. Opp. at 8. They further note that Plaintiff appears to be making a constitutional challenge to the statutory removal requirement but has cited no authority in support. *Id.*

### c. Balance of Equities

Next, Respondents argue that Petitioner cannot show the balance of equities tips in his favor, again noting that Petitioner's argument as to the balance of equities is based on the

underlying premise that his detention is unlawful. Opp. at 8-9. Thus, Respondents' argument goes, because the detention is not unlawful, Petitioner has not shown the balance of equities tips in his favor. *Id.*

          d.   Public Interest

Finally, Respondents argue that the public interest would not be served by releasing Petitioner for two reasons. Opp. at 9-10. First, they argue Petitioner's detention is required by law, and upholding the law furthers the public interest. *Id.* Second, less than one year ago, Petitioner was convicted of a felony count of performing lewd acts upon a child in violation of California law, and they assert that it is in the public interest to protect the public from individuals who have committed crimes. *Id.* at 10.

**C.    Analysis**

The Court finds that Petitioner has not shown a likelihood of success on the merits. Petitioner asserts that § 1231(a)(2) is unconstitutional as applied to him because he does not believe Respondents will find a viable third country for his removal. He seeks a Court order requiring DHS to "determine, by clear and convincing evidence, that there exists a specific, viable country of removal" before the expiry of that 90-day removal period, and to provide a written decision explaining the basis for that determination to Petitioner's counsel. *See* TRO at 12.

The Court finds the Supreme Court's decision in *Zadvydas v. Davis* and the Ninth Circuit's decision in *Khotesouvan v. Morones*, which relied on *Zadvydas*, instructive. *See Zadvydas*, 533 U.S. 679; *Khotesouvan*, 386 F.3d 1298 (9th Cir. 2004). In *Zadvydas*, the Petitioners were challenging their detentions beyond the 90-day removal period. 533 U.S. at 682. The Supreme Court held that, because indefinite detention would raise constitutional concerns, it would "construe the [post-removal-period] statute to contain an implicit 'reasonable time' limitation." *Id.* The Supreme Court provided that, to determine whether the detention is allowed under the post-removal-period statute, a court must determine whether a given period of detention is "within, or beyond, a period reasonably necessary to secure removal." *Id.* at 699. And in deciding that question, a court "must ask whether the detention in question exceeds a period reasonably necessary to secure removal." *Id.* The Supreme Court then went on to provide that a six month

detention is presumptively reasonable and, after that period, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

In *Khotesouvan*, the Ninth Circuit addressed a similar but related question: "whether the government may continue to detain an alien ordered removed who has been held in custody for fewer than 90 days, but whose removal is not reasonably foreseeable." 386 F.3d at 1299. And the Ninth Circuit, relying largely on *Zadvydas*, held that "an alien ordered removed whose removal is not reasonably foreseeable cannot raise a colorable claim for release under the Due Process Clause of the Fifth Amendment until at least 90 days of detention have passed." *Id.* The petitioners in that case argued that their detention was unconstitutional under *Zadvydas* because their removal was not reasonably foreseeable. *Id.* But the court distinguished the facts from *Zadvydas* because the petitioners in *Khotesouvan* filed their habeas petitions *prior to* the expiry of the 90-day removal period, and Congress had "mandated the detention of an alien ordered removed for 90 days." *Id.* at 1299-1300. The Ninth Circuit stated that "the Supreme Court has clarified that the *Zadvydas* due process analysis applies only if a danger of indefinite detention exists and there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 1300. The court ultimately held that "the period of detention under § 1231(a)(2) . . . passes constitutional scrutiny," and the *Zadvydas* due process analysis does not apply § 1231(a)(2) because it allows detention for only 90 days, and therefore does not present a threat of indefinite confinement. *Id.* at 1301.

The Court here finds that Petitioner has not "raise[d] a colorable claim for relief" that § 1231(a)(2) is unconstitutional as applied to the facts of his case. *See Khotesouvan*, 386 F.3d at 1299. Congress specifically provides for a 90-day removal period, and the Supreme Court has determined that such a period, plus an additional period of up to six months, is presumptively reasonable. *See* 8 U.S.C. § 1231(a)(2); *Zadvydas*, 533 U.S. at 701. The only basis Petitioner provides for departing from the statutory provision is that he does not think Respondents will be able to secure a third country for his removal. But Petitioner has provided no evidence that the search for a third country is futile, or thus that his detention is solely punitive or arbitrary at this point. And *even if* Petitioner had provided evidence that his removal was "not reasonably

foreseeable," such a showing would still be insufficient to raise an as-applied due process claim within the 90-day removal period. *See Khotesouvan*, 386 F.3d at 1299. The Court therefore finds no reason to depart from the statutory framework of § 1231(a)(2), and it declines to find that the 90-day statutory removal period is unconstitutional as applied to Petitioner.

To the extent that Petitioner is concerned about his ability to challenge his removal to a third country, should one be identified, *see* TRO at 5, such a claim is not yet ripe, because DHS has identified no such third country. *See Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009) ("[A] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998))). As discussed at the hearing, if DHS identifies a third country, it must provide Petitioner with the opportunity to challenge his removal to that country. *See Aden v. Nielsen*, 409 F. Supp. 3d 998, 1010-11 (W.D. Wash. 2019) (requiring ICE to provide petitioner a meaningful opportunity to be heard on a claim of fear as to removal to a third country identified after the close of removal proceedings).

Because the Court has found that there is no likelihood of success on the merits, nor serious questions going to the merits, it need not consider the other prongs of the TRO analysis.

## IV.  ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Petitioner's motion for a TRO is DENIED.

Dated: January 17, 2023

_____
BETH LABSON FREEMAN
United States District Judge